**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHRISTINA L. L.,[1]<br><br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 3:20-cv-00912-GCS[2] |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

**PROCEDURAL HISTORY**

Plaintiff filed for DIB in 2016; however, her claim was unsuccessful, both initially and on reconsideration. (Tr. 16, 136). On July 17, 2019, the Administrative Law Judge ("ALJ") held a hearing on Plaintiff's case. (Tr. 13-33). Plaintiff testified and was represented by counsel. *Id.* Nevertheless, the ALJ determined that Plaintiff was not disabled. *Id.* The Appeals Council denied review of that decision on July 21, 2020, thus

---

[1]   In keeping with the court's usual practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]   This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 14).

making the ALJ's determination the final decision of the commissioner. (Tr. 1).

## ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issue:

1. The ALJ erred in failing to account for deficits of concentration, persistence, or pace in the residual functional capacity ("RFC") finding.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his or her former occupation? and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the

Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. First, the ALJ noted that Plaintiff had not engaged in substantial gainful activity since her alleged onset disability date of January 1, 2015. (Tr. 18). The ALJ then found that Plaintiff had

severe impairments, including coronary artery disease, osteoarthritis of the left knee, bilateral fibrocartilage ligament tears, obesity, and major depressive disorder. *Id*. These impairments significantly limited Plaintiff in her ability to perform basic work activities. *Id*. Though the ALJ also found evidence that Plaintiff contended with anemia and hypertension, he found that both impairments were non-severe and did not have an impact on Plaintiff's ability to perform work on a regular and continuing basis. (Tr. 19).

Although Plaintiff suffered from severe impairments, the ALJ determined that these impairments and the combination of impairments did not meet or medically equal the severity of those impairments listed in 20 C.F.R. § 404. (Tr. 19). Of particular importance to this case, the ALJ found that Plaintiff's depression did not meet or medically equal the criteria listed in 12.04. (Tr. 20). The ALJ noted that Plaintiff must demonstrate at least one extreme or two marked limitations in a broad area of function, including: "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." *Id*. A claimant demonstrates a marked limitation when they are unable to function in an area independently, appropriately, or effectively on a sustained basis. *Id*. An extreme limitation is the inability to function independently, appropriately, or effectively in the area. *Id*. The ALJ found Plaintiff demonstrated a moderate limitation in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace. *Id*. The ALJ also found a moderate limitation in interacting with others or in adapting and managing oneself and in her ability to concentrate, persist, or maintain pace. (Tr. 20-21). However, the ALJ found Plaintiff had no limitation in her

ability to adapt or manage herself. (Tr. 21). As Plaintiff's limitations did not cause two marked limitations or one extreme limitation, the ALJ concluded that Plaintiff did not satisfy the requirements listed in 12.04. *Id*.

The ALJ examined Plaintiff's mental health records and noted that Plaintiff's depression and anxiety appeared to improve with medication and cognitive behavioral therapy. (Tr. 25). The ALJ also noted that Plaintiff testified as to her ability to sustain work at the sedentary exertional level, including daily chores, driving, and paying bills. *Id.* Finally, the ALJ considered opinion evidence from two State Agency psychological consultants: Donald Henson, Ph.D; and Howard Tin, Psy. D. (Tr. 26). Both consultants found that Plaintiff had mild to moderate limitations in daily living, social functioning, and maintaining concentration, persistence, and pace. *Id.* The ALJ assigned these opinions significant weight. *Id.* After careful consideration of the record, the ALJ concluded that Plaintiff had the RFC to "understand and remember simple instructions, and . . . attend to and carry out routine and repetitive tasks." (Tr. 22). The ALJ also found that Plaintiff had the RFC to "have occasional interaction with the public." *Id*.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. As Plaintiff appeals the ALJ's decision pertaining to Plaintiff's mental impairments only, the Court has provided only the relevant portions of the evidentiary record below.

### 1.     Evidentiary Hearing

Plaintiff was represented by an attorney during the June 11, 2019 evidentiary hearing. (Tr. 36). Although Plaintiff was unemployed at the time of the hearing, she testified that she previously worked as a cleaner for approximately twenty hours per week prior to the onset of her claimed disability. (Tr. 43-44). Plaintiff testified that she left this employment primarily due to physical limitations with her wrist, knee, and heart. (Tr. 44).

Plaintiff testified that she experienced sporadic chest pains, which she believed were related to fear and anxiety. (Tr. 45). These pains would last an hour or two; in order to stop the pain, Plaintiff would "sit still and be calm." *Id*. She also occasionally used Xanax to calm her fear; however, medical professionals warned her against taking this medication because it could interact with her Zoloft prescription. (Tr. 45-46). Plaintiff testified that she experienced these pains at least three times per week. (Tr. 46).

When asked about her anxiety and depression, Plaintiff stated that she sees counselors every week for treatment. (Tr. 50). She also explained that her long-term psychiatrist prescribed her Zoloft and Trazadone; Plaintiff's psychiatrist increased both prescriptions the Wednesday prior to the evidentiary hearing. (Tr. 51). Plaintiff's primary care physician also prescribed her Sertraline and Xanax for anxiety management. *Id*. According to Plaintiff, these medications helped her sleep, but sometimes made her feel "zoned out" throughout the day. (Tr. 52). Despite the medications, Plaintiff noted that she still has panic attacks. (Tr. 53). When Plaintiff feels a panic attack coming on, she stays in her house in order to avoid having an attack in public. *Id*. Furthermore, Plaintiff

explained that she could no longer do physical labor or household chores because of the panic attacks, though she sometimes would vacuum or sweep the house. (Tr. 54).

The ALJ also heard testimony from vocational expert ("VE") Darrell Taylor. (Tr. 59). The ALJ asked Dr. Taylor whether work existed in the national economy for a person who, *inter alia*, could "understand and remember simple instructions, can attend to and carry out routine or repetitive tasks, and can occasionally interact with the public." (Tr. 60). Dr. Taylor explained that approximately 22,000 sedentary unskilled hand packer positions; 25,000 sedentary unskilled postal worker positions; and 12,000 sedentary unskilled inspector/sorter positions existed for such a person nationally. *Id*. Each of these positions had an SVP of 2. *Id*. Plaintiff's attorney also asked Dr. Taylor to describe the tolerance for absenteeism and off-task behavior in these positions. (Tr. 61). Dr. Taylor estimated that a person who was absent one day in a one-month period that occurred over two consecutive months would result in termination, while off-task behavior for ten percent or more of the day would result in termination. *Id*.

**2. Medical Records**

On March 15, 2016, Plaintiff's primary care physician noted that Plaintiff demonstrated symptoms of anemia, anxiety, emotional upset, coronary atherosclerosis, gastroesophageal reflux disease, dysfunctional uterine bleeding, dizziness, and atypical chest pains. (Tr. 890). Plaintiff's listed prescriptions during this visit included 0.5 milligrams of Xanax twice daily and fifty milligrams of Zoloft once daily for anxiety. (Tr. 891). Her mental status during this visit was "active and alert and anxious." (Tr. 893).

Just prior to the visit with her primary care physician, on March 14, 2016, Plaintiff began behavioral therapy at Red Bud Regional Hospital. (Tr. 594). Plaintiff's therapist discussed relaxation techniques Plaintiff could use when she began having difficulty breathing. (Tr. 598). They also discussed Plaintiff's difficulty with sleeping and controlling cognitive distortions. *Id*. However, Plaintiff made only minimal improvement with therapy throughout March and April 2016. (Tr. 598-606).

In February 2017, Plaintiff's therapist noted that Plaintiff had a depressed mood, fatigue, social withdrawal, feelings of worthlessness and hopelessness, a diminished ability to concentrate, hypersomnia, irritability, anxious mood, panic, distractibility and poor concentration, fear, and disturbed sleep. (Tr. 1122-1123). Although Plaintiff's therapist found that these symptoms were only moderate, (Tr. 1126), the therapist also noted that the symptoms cause clinically significant distress in important areas of functioning. (Tr. 1148).

Plaintiff presented with the same psychiatric conditions in February 2018. (Tr. 1152-1153). Plaintiff's therapist again noted that her symptoms were only moderate. (Tr. 1155). The therapist also found that Plaintiff experienced some improvements in learning coping skills to deal with her anxiety. (Tr. 1177). In November 2018, Plaintiff's treating physician noted that Plaintiff scored for moderate depression during a depression screening. (Tr. 1201).

### 3. The State Agency Consultant's Review

State Agency Consultant ("SAC") Dr. Henderson found that, overall, Plaintiff had

moderate limitations in: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. (Tr. 68-69). When completing the Mental Residual Functional Capacity Assessment ("MRFC") Section I, Dr. Henderson specifically noted that Plaintiff had sustained concentration and persistence limitations. (Tr. 73). These limitations included moderate limitations to her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular attendance and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* In the MRFC Section III, Dr. Henderson explained in narrative form that Plaintiff "would have problems satisfactorily performing detailed activities of a somewhat complicated nature." (Tr. 74). However, "she performs chores and leisure activities which have few physical demands and possesses significant cognitive and attentional abilities to perform simple routine activities which are within the limits of her physical capabilities and have few social demands." *Id.* Overall, Dr. Henderson found Plaintiff was capable of one to two step activities. *Id.*

Dr. Tin, the other SAC, also found that Plaintiff had moderate limitations in concentration, persistence, and pace. (Tr. 105). In the MRFC Section I, Dr. Tin stated that Plaintiff had moderate limitations in her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular attendance and be punctual within customary tolerances;

to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Tin also provided the same narrative assessment as Dr. Henderson in Section III of the MRFCA. (Tr. 106).

## ANALYSIS

Plaintiff argues that the ALJ's hypothetical posed to VE Dr. Taylor and the resulting RFC failed to fully account for Plaintiff's limitations in concentration, persistence, and pace. (Doc. 28, p. 4). The hypothetical and resulting RFC limited Plaintiff to "work involving only simple instructions as well as routine and repetitive tasks to account for her moderate difficulties with concentration and understanding, remembering or applying information[.]" (Tr. 26). The Seventh Circuit has been very clear that a limitation to simple instructions or to simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Instead, the Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or to unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. In *Stewart*, for example, the Court observed, "[t]he Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (citations

omitted). The Court has reaffirmed that position several times in recent years. *See O'Connor-Spinner*, 627 F.3d at 620; *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

Here, the ALJ provided the straightforward limitation that Plaintiff be assigned only to simple and repetitive tasks and simple instructions. (Tr. 22, 26). However, that is not sufficient to account for a moderate limitation in maintaining concentration, persistence, or pace. Indeed, "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The Seventh Circuit put it succinctly in a recent case:

> As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

*Martin v. Saul,* 950 F.3d 369, 373 (7th Cir. 2020).

The ALJ in *Martin* adequately accounted for deficiencies in maintaining concentration, persistence, and pace by limiting the plaintiff to jobs that involve "only simple tasks with low stress, occasional changes, a flexible pace, and superficial interactions with others." *Martin*, 950 F.3d at 373. Similarly, in *Burmester*, the Seventh Circuit found no error where the ALJ limited the plaintiff to "simple, routine, repetitive

tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public." *Burmester*, 920 F.3d at 509. The reviewing doctor in that case "stated in the 'Statement of Work Capacity' portion of his assessment that Burmester had the 'ability to understand, remember and carry out simple instructions subject to physical limitations,' that 'maintaining concentration and attention should be manageable' and that she 'should be able to withstand routine work stress and adapt to typical job site changes.'" Whereas the issue of maintaining concentration, persistence, and pace is directly addressed in *Martin* and *Burmester*, the ALJ's limitation in the instant case does not address this concern. Rather, the ALJ simply assumed that the restriction to simple tasks at a non-production rate pace would account for this potential problem.

Seventh Circuit precedent does not require the ALJ to use specific words to express a claimant's limitations in maintaining concentration, persistence, or pace. The Seventh Circuit, however, explained what was required when it stated the following: "[w]e decline to provide a glossary of adjectives for use in RFC determinations. What we do require—and our recent precedent makes plain—is that the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC." *Martin*, 950 F.3d at 374. The limitation to simple instructions and routine and repetitive tasks is not sufficient for the reasons explained in the cases cited above, *i.e.*, the complexity of a task is not related to the ability to stick with the job for a full shift. While the limitation to no production requirements such as an assembly line does address difficulties in

maintaining pace, it does not address attention and concentration. *See Martin*, 950 F.3d at 374; *Varga,* 794 F.3d at 815. The Seventh Circuit reiterated this point when it stated: "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp*, 916 F.3d at 676.

Defendant points out that new regulations for mental impairments govern this case. (Doc. 29, p. 7). These regulations define moderate limitations as meaning that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(2). Defendant relies on *Pavlicek v. Saul* to argue that this new definition supports an ALJ in offering an RFC broadly limiting a claimant to "simple, repetitive tasks at a consistent pace[.]" 994 F.3d 777, 783 (7th Cir. 2021). This is because "'fair' in ordinary usage does not mean 'bad' or 'inadequate[;]'" rather, to the contrary, a moderate limitation is consistent with such an RFC. *Id.* However, when placed in its jurisprudential and policy context, it is clear that the Court in *Pavlicek* did not provide a new foundation for such broad RFCs, but rather, examined whether the proposed RFC comported with the SACs' findings.

When a claimant has a severe impairment which does not equal a listing, the SAC provides a detailed assessment of the claimant's mental residual functional capacity on the MRFCA. In Section I, the SAC marks a checklist of potential areas of limitation. *See Hoeppner v. Kijakazi*, Case No. 20-CV-582, 2021 WL 4199336, at *5 (E.D. Wisc. Sept. 15, 2021). In section III, the SAC provides a Functional Capacity Assessment in narrative

form. *Id*. This section records the RFC assessment and explains Section I in terms of the extent to which these functions could be performed in work settings. *Id*. (internal citations omitted). Many ALJs, however, have relied solely on Section III in order to formulate an RFC or hypothetical question for a VE, leading to litigation regarding whether the ALJ properly captured the suggested RFC. *Id*. This litigation most recently culminated in the *Pavlicek* case referenced above. *See id.*

For example, in *Yurt*, the SAC noted that the plaintiff had moderate limitations in six areas of function in Section I of the MRFCA. 758 F.3d at 857. However, Section III simply noted that the plaintiff retained the capacity for unskilled work. *Id*. The Seventh Circuit held that the ALJ erred by relying solely on the Section III narrative when crafting the RFC because that section failed to account for all of the findings listed in Section I. *Id*. at 858. The Seventh Circuit applied the same reasoning to hypotheticals posed to VEs based solely on Section III of the MRFCA. *See Varga*, 794 F.3d at 816.

Next, in *DeCamp*, the SAC noted limitations in punctuality and in pace. 916 F.3d at 675. However, the Section III narrative stated only that the plaintiff was able to meet the demands of unskilled work. *Id*. The ALJ formulated a hypothetical for the VE that limited the claimant to "unskilled work with an SVP of two or less, with no fast-paced production line or tandem tasks, at a job that allows her to be off task at least ten percent of the workday." *Id*. However, the Seventh Circuit found that this hypothetical and the corresponding RFC failed to account for the limitations the SAC noted in punctuality. *Id*. at 676. Specifically, the Court noted that the ALJ cannot focus his analysis purely on the

SAC's "bottom-line conclusions" without giving the VE any basis to evaluate "*all*" of the plaintiff's impairments. *Id.* (emphasis in original). Because the hypothetical posed to the VE was faulty, the RFC which mirrored that hypothetical was also faulty. *Id.* As the Eastern District of Wisconsin explained, the jurisprudential history preceding *Pavlicek* makes "crystal-clear" that any "translation" of Section III of the MRFCA in an RFC or hypothetical posed to a VE must include all limitations noted in Section I. *Hoeppner*, 2021 WL 4199336, at *8.

The Seventh Circuit builds on this analysis in *Pavlicek*. The District Court in *Pavlicek* noted that the SAC found the claimant moderately limited in four areas in Section I: (i) understanding and remembering detailed instructions; (ii) carrying out detailed instructions; (iii) maintaining attention and concentration for extended periods; and (iv) completing a normal workday and workweek without interruptions from psychologically based symptoms or performing at a consistent pace without an unreasonable number and length of rest breaks. *See Pavlicek v. Saul*, No. 19-cv-41-slc, 2020 WL 2092762, at *2 (W.D. Wisc. May 1, 2020), *aff'd*, 994 F.3d 777 (7th Cir. 2021). However, in Section III, the SAC stated:

> The medical evidence available supports that the claimant is able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions. Also claimant maintains the ability to sustain attention throughout extended periods of time (up to 2 hours at a time). [Medical evidence] endorses that the claimant maintains the ability to perform at a consistent pace particularly if [he] is engaged in a [sic] simple, repetitive tasks. [Medical evidence] supports that the claimant have [sic] an adequate ability to maintain an [sic] regular schedule.

*Id.* The ALJ, in turn, limited the claimant to the following:

> understanding, remembering, and carrying out simple instructions and routine, repetitive tasks . . . capable of making simple work-related decisions or judgements, in an environment without fast-paced production requirements and with few, if any changes in work duties; limited to only occasional interaction with supervisors; and within the above limits, able to attend work, pay attention, and concentrate at work tasks within tolerable limits . . .

*Id.* at *4. The District Court concluded that this RFC sufficiently accounted for the claimant's moderate limitations in concentration, persistence, and pace. *Id.*

The Seventh Circuit upheld the District Court's decision in *Pavlicek* on appeal. *Pavlicek*, 994 F.3d 777. On appeal, the plaintiff argued that the checklist noting moderate limitations conflicted with the findings in Section III of the MRFCA, making the ALJ's reliance on the narrative error. *Id.* at 783. However, the Court noted that the proper question was whether the narrative fully encapsulated and translated the findings in Section I. *Id.* (citing *Varga*, 794 F.3d at 816). The Court found that the ALJ's RFC adequately translated those findings. In rejecting the plaintiff's contention, the Court noted that a moderate limitation would not always result in a finding limiting the claimant more than the RFC the ALJ provided: the new definition of a moderate limitation as "fair" did not mean that a claimant could not perform simple or repetitive tasks at a consistent pace. *Id.* The RFC in *Pavlicek* was considerably more tailored to the claimant's limitations than a mere restriction to "work involving only simple instructions as well as routine and repetitive tasks to account for her moderate difficulties with concentration and understanding, remembering or applying information[.]" (Tr. 26). As such, the Seventh Circuit did not comment on whether such a formulation of the RFC would be sufficient. Instead, this finding reinforced Seventh Circuit jurisprudence that

an RFC which fully includes all of the findings in both Sections I and III of the MRFCA is sufficient. *See Hoeppner*, 2021 WL 4199336, at *8. In doing so, an ALJ's RFC must go beyond equating a restriction on concentration, persistence, and pace with a work capacity limited to simple tasks, even after the new regulations defined a moderate limitation as "fair." *See, e.g., Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021)(analyzing and applying *Pavlicek*, 994 F.3d at 783, in the context of *Martin*, 950 F.3d at 374).

In contrast with the RFC offered in *Pavlicek*, the ALJ's RFC in this case fails to encapsulate all of the limitations the SACs noted in Section I of the MRFCA. The ALJ's vague RFC is particularly concerning because it does not comport with the significant weight assigned to the opinions of the SACs. *See* (Tr. 26). Both Dr. Henderson and Dr. Tin found that Plaintiff had moderate limitations in punctuality and in maintaining a workday or workweek without interruptions, in addition to limitations in carrying out detailed instructions and maintaining attention and concentration for extended periods of time. (Tr. 72-73; 105). However, the ALJ's RFC addressed only Plaintiff's need for simple instructions and routine and repetitive tasks. (Tr. 26). This RFC therefore fails to account for two of the limitations each of the SACs noted in their examinations of Plaintiff. Accordingly, the RFC does not account for deficits in Plaintiff's ability to concentrate, persist, or maintain a particular pace.

Defendant also points to *Urbanek v. Saul*, No. 19-1394, 796 Fed. Appx. 910 (7th Cir. Dec. 16, 2019); *Pytlewski v. Saul*, No. 18-3673, 791 Fed. Appx. 611 (7th Cir. Nov. 12, 2019);

and *Morrison v. Saul*, No. 19-2028, 806 Fed. Appx. 469 (7th Cir. Mar. 10, 2020). (Doc. 29, p. 8-9). In each of these cases, the Seventh Circuit held that generic limitations, including limiting a claimant to simple tasks, may properly account for moderate limitations only if they adequately account for the claimant's demonstrated psychological symptoms as found in the record, and specifically, as noted in the SACs' opinions. *See Urbanek*, 796 Fed. Appx. 910, 914 (internal citations omitted). However, the ALJ in this case did not support his findings by pointing to evidence in the record. Though the ALJ afforded significant weight to the SACs' opinions, he neglected to include in his RFC the limitations the SACs had outlined. (Tr. 26). This analysis leaves a gap in which Plaintiff must guess why, exactly, the ALJ issued the generic limitation restricting Plaintiff to "work involving only simple instructions as well as routine and repetitive tasks to account for her moderate difficulties with concentration and understanding, remembering or applying information." (Tr. 26).

Defendant also relies on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). There, the Seventh Circuit rejected the plaintiff's argument that it was error to omit a reference to a moderate limitation in concentration, persistence, or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498. That case, however, is distinguishable from the case at hand on that very basis. The Seventh Circuit explained its holding in *Jozefyk* in a later case:

> In closing, we owe a word to the Commissioner's reliance on our recent decision in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). We do not read *Jozefyk* to save

>   the shortfalls in the ALJ's analysis here. In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations. 923 F.3d at 498. As the Commissioner concedes, the facts here are different. The medical evidence plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations.

*Crump*, 932 F.3d at 571. Similar to *Crump* above, the medical evidence provided by the SACs in this case supports finding that Plaintiff's capabilities in punctuality and completing her workday and workweek without interruptions were more limited than accounted for in the RFC. (Tr. 72-73, 105). Although the ALJ cites to the SACs' opinions, he does not account for the totality of those opinions in his final RFC. (Tr. 26).

Finally, Defendant argues that Plaintiff bears the burden to demonstrate that the ALJ's RFC was insufficient based on Plaintiff's specific symptoms and functional limitations. (Doc. 29, p. 9). As Defendant points out, there is no treating source or other expert opinions, aside from the SACs, on which Plaintiff can rely. *Id*. Accordingly, Defendant claims that there is no evidence to support "any other limits greater than those the ALJ set." *Id*. (citing *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021)). However, this argument overlooks that the evidence before the ALJ itself supported a stronger limitation, *i.e.*, the SACs noted limitations for which the ALJ did not account for when formulating the RFC. Therefore, unlike in *Gedatus*, evidence in this case provides an opinion from doctors which support limits greater than those the ALJ set. Accordingly, the ALJ's RFC failed to account for Plaintiff's deficits in concentration, persistence, and pace, and remand is appropriate in this case.

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

DATED: March 28, 2022.

Digitally signed by Judge Sison 2
Date: 2022.03.28 13:39:40 -05'00'

GILBERT C. SISON
**United States Magistrate Judge**